**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 1:15-cv-00247-REB-NYW

AMCO INSURANCE COMPANY, an Iowa corporation,

    Plaintiff,

v.

CARPET DIRECT CORPORATION, a Colorado Corporation,
GAYLE CROUCH,
GREG JENSEN,
JAMES RAUSCH, and
CHARLES OWENS,

    Defendants.

## ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**Blackburn, J.**

The matter before is **Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [#18],[1] filed August 14, 2015.  I grant the motion.

### I.  JURISDICTION

I have jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (diversity of citizenship).

### II.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  **FED. R. CIV. P.** 56(a); ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265

---

[1] "[#18]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's case management and electronic case filing system (CM/ECF).  I use this convention throughout this order.

(1986). A dispute is "genuine" if the issue could be resolved in favor of either party. ***Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.***, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); ***Farthing v. City of Shawnee***, 39 F.3d 1131, 1135 (10th Cir. 1994). A fact is "material" if it might reasonably affect the outcome of the case. ***Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); ***Farthing***, 39 F.3d at 1134.

A party who does not have the burden of proof at trial must show the absence of a genuine factual dispute.[2] ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir. 1994), ***cert. denied***, 115 S.Ct. 1315 (1995). Once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Id*** at 1518. All the evidence must be viewed in the light most favorable to the party opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). In either case, once the motion has been properly supported, the burden shifts to the nonmovant to show, by tendering depositions, affidavits, and other competent evidence, that summary judgment is not proper. ***Concrete Works***, 36 F.3d at 1518. All the evidence must be viewed in the light most favorable to the party

---

[2] Although the insurer is nominally the plaintiff in this declaratory judgment action, it is the insured who bears the burden of proof as to the issue of coverage under the policy. ***See Advantage Homebuilding, LLC v. Maryland Casualty Co.***, 470 F.3d 1003, 1008 (10th Cir. 2006). Although the insurer bears the burden of establishing the applicability of any exclusion, ***see Arkansas Valley Drilling, Inc. v. Continental Western Insurance Co.***, 703 F.Supp.2d 1232, 1238 (D. Colo. 2010), plaintiff here did not put forward any argument regarding any exclusion of the policy in its motion. Its belated (and woefully underdeveloped) argument regarding the putative application of allegedly relevant exclusions in the policy is procedurally improper and plays no part in this court's resolution of the motion. ***See LNV Corp. v. Hook***, 2015 WL 5679723 at *3 (D. Colo. Sept. 25, 2015).

opposing the motion. ***Simms v. Oklahoma ex rel Department of Mental Health and Substance Abuse Services***, 165 F.3d 1321, 1326 (10th Cir.), ***cert. denied***, 120 S.Ct. 53 (1999). However, conclusory statements and testimony based merely on conjecture or subjective belief are not competent summary judgment evidence. ***Rice v. United States***, 166 F.3d 1088, 1092 (10th Cir.), ***cert. denied***, 120 S.Ct. 334 (1999); ***Nutting v. RAM Southwest, Inc.***, 106 F.Supp.2d 1121, 1123 (D. Colo. 2000).

### III. ANALYSIS

Defendant Carpet Direct Corporation ("Carpet Direct") is insured under two policies issued by plaintiff, a Business Owners Insurance Policy and a Commercial Umbrella Liability Policy, both effective from August 17, 2013, through August 17, 2014.[3] Plaintiff is currently providing a defense under a reservation of rights to defendants in a lawsuit filed against them in federal district court in Michigan. In the lawsuit in this court, plaintiff seeks a declaration that it has no duty to defend under the terms of the policies. Comparing the language of the policies to the allegations of the underlying complaint, I concur, and thus grant plaintiff's motion for summary judgment.

Under Colorado law, "[a]n insurer's duty to defend arises when the underlying complaint against the insurer alleges any facts that might fall within the coverage of the policy. " ***Hecla Mining Co. v. New Hampshire Insurance Co.***, 811 P.2d 1083, 1089 (Colo. 1991). The duty to defend thus turns on the interpretation of the insurance policy, which in turn is governed by general principles of contract interpretation. ***See id.***

---

[3] Carpet Direct was insured continuously under a series of these same policies dating back to 2010. Plaintiff represents that, with minor differences not relevant to the present dispute, the policies are substantially identical, and defendants have not challenged that assertion.

at 1090.  The primary goal in interpreting the contract of insurance is to effectuate the intent of the parties.  **Union Insurance Co. v. Houtz**, 883 P.2d 1057, 1061 (Colo. 1994); **Simon v. Shelter General Insurance Co.**, 842 P.2d 236, 239 (Colo. 1992).  To accomplish this objective, the terms of the policy are given their plain and ordinary meanings unless the policy itself indicates that the parties intended otherwise.  **Bohrer v. Church Mutual Insurance Co.**, 965 P.2d 1258, 1261-62 (Colo. 1998); **Chacon v. American Family Mutual Insurance Co.**, 788 P.2d 748, 750 (Colo. 1990).  Policy provisions that are clear and unambiguous should be enforced as written.  **Chacon**, 788 P.2d at 750; **Kane v. Royal Insurance Co. of America**, 768 P.2d 678, 680 (Colo. 1989).

As is relevant here, Part A of the business owners policy provides coverage as follows:

> We will pay those sums up to the applicable Limit of Insurance that the insured becomes legally obligated to pay as damages because of . . . "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages for which there is coverage under this policy.

(**Def. Resp. App.**, Exh. A-2 at 129.)[4]  As defined by the policy, "property damage" means either "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."  (**Id.**, Exh. A-2 at 149.)  Moreover, the insurance applies only if the "'property damage' is caused by an 'occurrence' that takes the place in the 'coverage territory.'" (**Id.**, Exh. A-2

---

[4] The policy also provides coverage for "bodily injury," but defendants do not contend the underlying lawsuit seeks damages attributable to any such injury.

at 129.) "'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (*Id.* Exh. A-2 at 148.) Defendant has no duty to defend as to any suit seeking damages to which the insurance does not apply. (*Id.*, Exh. A-2 at 129.)

Part B of the business owners policy also provides coverage for damages due to "personal and advertising injury." Among the types of matters and injuries which come within the definition of "personal or advertising injury" are injuries arising out of "[t]he wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor." (*Id.*, Exh. A-2 at 148.)

An umbrella policy "is a distinct type of excess liability policy," which "in addition to providing excess liability coverage . . . typically also provides primary coverage for certain risks that an underlying liability policy does not cover." ***Apodaca v. Allstate Insurance Co.***, 255 P.3d 1099, 1103 (Colo. 2011). Such is the nature of the umbrella policy here. Part A provides excess insurance as to claims for damages because of, *inter alia*, property damage, if such claims exceed the applicable limits of the underlying insurance (i.e., the business owners policy). (**Def Resp. App.**, Exh. B at 8.) Part A thus is a "follow form" policy, and does not provide coverage for any loss other than by reason of exhaustion of the limits of the underlying policy. (*Id.*, Exh. B at 8.) Therefore, a loss related to damages not covered by the underlying policy is not recoverable under the excess policy, either.

Part B of the umbrella policy, by contrast, provides primary coverage for

"damages the 'insured' becomes legally obligated to pay by reason of liability imposed by law because of . . . 'property damage,' or 'personal and advertising injury' covered by this insurance which takes place during the Policy Period and is caused by an 'occurrence.' (*Id.*, Exh. B at 8.)  The definitions of "property damage," "personal and advertising injury," and "occurrence" in this part of the umbrella policy are identical to those set forth in the business owners policy.  (*See id.*, Exh. B at 18, 22.)  With the relevant coverages of the policies thus delineated, I turn to consider whether plaintiff has a duty to provide a defense against the claims pleaded in the underlying lawsuit.

In determining whether plaintiff has a duty to defend, the factual allegations of the complaint are determinative, not the legal theories pleaded.  *See Bertagnolli v. Association of Trial Lawyers Assurance*, 934 P.2d 916, 918 (Colo. App. 1997); *Colorado Farm Bureau Mutual Insurance Co. v. Snowbarger*, 934 P.2d 909, 911 (Colo. App. 1997).  The plaintiffs in the underlying lawsuit, styled *VanPortfliet v. Carpet Direct Corp.,* are current and former Carpet Direct "brokers" (essentially, franchisees), who paid for the right to operate businesses under the Carpet Direct name.  The *VanPortfliet* plaintiffs allegedly were told they would "become independent business owners, with rights of ownership" in the businesses in which they were investing.  (**Def. Resp. App.**, Exh. C ¶ 38 at 10; *see also id.*, Exh. C ¶ 37 at 10 (brokers told they would "end up the owners of their own business within Carpet Direct's system" and that they were "forming a business they own, that can be sold as an asset or left to their heirs").)

Contrary to these representations, the plaintiffs allege they learned subsequently that they "possess none of the rights of a business owner" and in fact "are nothing more

[than] improperly compensated employees of the organization." (*Id.*, Exh. C ¶¶ 40-41 at 11.) They thus claim they have lost, or stand to lose, the significant capital contributions they have made to the businesses they believed, based on defendants' alleged misrepresentations, they were creating for themselves. (*Id.*, Exh. C ¶ 40 at 11.) They seek "compensation for the monies so wrongfully paid as capital contributions to Carpet Direct," as well as wages properly calculated under the Fair Labor Standards Act. (*Id.*, Exh. C ¶ 42 at 11.)

Defendants maintain the allegations of the complaint arguably assert damages due to the loss of use of tangible property, and thus come within the policies' coverage of property damage. This argument, while inventive, is unavailing. While the term "tangible property" is not defined by the policy, courts in Colorado have long held that "'tangible property is that which is capable of being handled, touched, or physically possessed.'" ***American Family Mutual Insurance Co. v. Teamcorp., Inc.***, 659 F.Supp.2d 1115, 1130 (D. Colo. 2009) (quoting ***Lamar Truck Plaza, Inc. v. Sentry Insurance***, 757 P.2d 1143, 1144 (Colo. App. 1988)).[5]

By contrast, "[p]urely economic losses are not included in this definition." *Id.*[6] ***See also ERA Franchise Systems, Inc. v. Northern Insurance Co. of New York***, 32

---

[5] This same definition appears to have been universally adopted by courts which have considered the matter. ***See, e.g.***, ***Nautilus Insurance Co. v. John Gannon, Inc.***, 103 Fed. App. 534, 537 (5th Cir. 2004); ***Lucker Manufacturing. v. Home Insurance Co.***, 23 F.3d 808, 818 (3rd Cir. 1994); ***America Online, Inc. v. St. Paul Mercury Insurance Co.***, 207 F.Supp.2d 459, 467 (E.D. Va. 2002), ***aff'd***, 347 F.3d 89 (4th Cir. 2003); ***American States Insurance Co. v. Martin***, 662 So.2d 245, 248 (Ala. 1995); ***Graber v State Farm Fire and Casualty Co.***, 797 P.2d 265, 269 (Mont. 1990).

[6] By contrast, economic losses that causally follow physical damage to tangible property may be covered. ***See Mid-Continent Casualty Co. v. Circle S Feed Store, LLC***, 754 F.3d 1175, 1184 (10th Cir. 2014).

F.Supp.2d 1254, 1260 (D. Kan. 1998), *aff'd*, 208 F.3d 225 (10th Cir. 2000).[7]  Such is the nature of the ***VanPortfliet*** plaintiffs' prayer for the return of their capital contributions.[8] Although defendants point out that the complaint includes factual allegations regarding the various equipment and materials in which the ***VanPortfliet*** plaintiffs invested in reliance on defendants' alleged promises of ownership,[9] the plaintiffs are not seeking return of those physical items of property, much less complaining about the loss of their use.  Instead, the gravamen of their complaint is that they failed to receive the benefit of their bargains, and thus suffered economic damages commensurate with their investments in reliance on defendants' alleged misrepresentations.  These types of allegations do not assert claims for the loss of use of tangible property, and thus are not within the coverage of the policies.[10]  ***See Mullin v. Travelers Indemnity Co. of***

---

[7] This, too, appears to be the rule of consensus among the courts.  ***See, e.g.***, ***Keating v. National Union Fire Insurance Co. of Pittsburgh***, 995 F.2d 154, 156-57 (9th Cir. 1993); ***Coulter v. CIGNA Property & Casualty Cos.***, 994 F.Supp. 1101, 1122-23 (N.D. Iowa 1996) (citing cases).

[8] The ***VanPortfliet*** plaintiffs plainly allege that their expectations of ownership interests in their Carpet Direct businesses were illusory.  Nevertheless, had any such interests been alleged to have existed, they would constitute intangible, not tangible, property.  ***See Johnson v. Amica Mutual Insurance Co.***, 733 A.2d 977, 978-79 (Me. 1999) ("'[I]intangible property'  is property that has 'no intrinsic and marketable value, but is merely the representative or evidence of value, such as certificates of stock, bonds, promissory notes, copyrights, *and franchises*.'") (quoting **BLACK'S LAW DICTIONARY** 809, 1456 (6th ed. 1990)) (emphasis added).  This remains true even though aspects of ownership may be manifest in certain physical items required to run the business (***see infra*** n. 9).  ***See Cincinnati Insurance Co. v. Professional Data Services, Inc***., 2003 WL 22102138, at *6-7 (D. Kan. July 18, 2003).  The loss of such intangible legal interests thus would not trigger coverage under the policies' property damage provisions, either.  ***See Kazi v. State Farm Fire and Casualty Co.***, 24 Cal.4th 871, 880, 15 P.3d 223 (Cal. 2001) ("To construe tangible property as including a legal interest . . . in property "requires a strained and farfetched interpretation") (citation and internal quotation marks omitted).

[9] (***See, e.g.* Def. Resp. App.**, Exh. C ¶ 47 at 12 (plaintiff told he would eventually own forklifts and warehouse racks), ¶ 51 at 13 (plaintiff purchased building to store materials), ¶ 75 at 18 (plaintiff paid for various materials, repairs, expenses, and improvements), ¶ 111 at 25 (plaintiff purchased van).)

[10] Contrary to defendants' arguments, the ***VanPortfliet*** plaintiffs are not seeking "return of ownership of the businesses" pursuant to Michigan's Franchise Investment Law.  (**Def. Resp.** at 14.)  Instead, they claim to be entitled to rescind the sale of their franchises and recoup the consideration paid to Carpet Direct, plus interest and fees.  (**Def. Resp. App.**, Exh. C ¶ 223 at 42.)

*Connecticut*, 541 F.3d 1219, 1224 (10th Cir. 2008).  *See also Johnson v. Amica Mutual Insurance Co.*, 733 A.2d 977, 979 (Me. 1999); *Houston Petroleum Co. v. Highlands Ins. Co.*, 830 S.W.2d 153, 156 (Tex. App. – Houston [1st Dist.] 1991, writ denied).

Nor does the underlying lawsuit contain any allegations that arguably or potentially fall within the policies' coverage for personal and advertising injury. Coverage under this clause requires some allegation of the invasion of a right in real property.  *See Liberty Mutual Insurance Co. v. East Central Oklahoma Electrical Co-operative*, 97 F.3d 383, 390 (10th Cir. 1996).  Again, the *VanPortfliet* plaintiffs are not alleging damages resulting from being divested of ownership in their business – their complaint is that, despite defendants' promises, they never had any such rights. Moreover, it stretches the allegations of the underlying complaint far too thin to suggest, as defendants do, they can be read to assert that the *VanPortfliet* plaintiffs were "evicted" from their business premises.  Unsurprisingly, defendants cite no specific allegation of the underlying complaint in support, and the court will not pile inference on inference to arrive at such an attenuated construction.[11]

---

[11] Nor do plaintiffs' allegations that defendants' failed to provide the disclosures required by the Michigan Franchise Investment Law assert an "occurrence" within the meaning of the policy. "Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (**Def. Resp. App.**, Exh. A-2 at 148; Exh. B at 19.) Although the term "accident" is not further defined by the policies, it is well-established under Colorado law that the plain and ordinary meaning of the term is "an unanticipated or unusual result flowing from a commonplace cause." *Fire Insurance Exchange v. Bentley*, 953 P.2d 1297, 1301 (Colo. App. 1998) (citing *Carroll v. CUNA Mutual Insurance Society*, 894 P.2d 746, 753 (Colo. 1995)). That the *VanPortfliet* plaintiffs do not allege defendants intentionally failed to provide the required disclosures does not lead to the conclusion that their implicit negligence was an accident:

> While negligence often leads to an accident, negligent behavior is not itself an 'accident.' . . . Negligent conduct itself is not an undesigned, sudden, or unexpected event of an afflictive or unfortunate character, but

Accordingly, I find and conclude that the policies of insurance do not cover the losses claimed in the underlying lawsuit. Correspondingly, plaintiff has no duty to defend defendants in that matter, and is entitled to summary judgment here.

## IV.  ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Plaintiff's Motion for Summary Judgment Pursuant to Fed. R. Civ. P. 56** [#18], filed August 14, 2015, is granted;

2.  That it is declared that AMCO Policy Nos. ACP BPW 7534648380 and AMCO Policy No. ACP CAA 7534648380 do not provide coverage for the claims asserted in the Second Amended Complaint filed in *VanPortfliet v. Carpet Direct Corp.,* Civil Case No. 14-cv-00396 (W. D. Michigan), and AMCO, therefore, has no duty to defend defendants against those claims;

3.  That judgment with prejudice shall enter on behalf of plaintiff, AMCO Insurance Company, an Iowa corporation, and against defendants, Carpet Direct Corporation, a Colorado Corporation; Gayle Crouch; Greg Jensen; James Rausch; and Charles Owens, as to plaintiff's claims for declaratory relief;

4.  That the combined Final Pretrial Conference/Trial Preparation Conference set February 19, 2016, at 9:30 a.m., and the trial set to commence March 7, 2016, are vacated; and

5.  That plaintiff is awarded its costs, to be taxed by the clerk of the court in the

---

often the cause of such an event.

*Cincinnati Insurance Co. v. Professional Data Services., Inc*., 2003 WL 22102138, at *9 (D. Kan. July 18, 2003) (citations omitted).

time and manner specified in Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

Dated January 22, 2016, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge